**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| COLLETTE DENISE TALTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-252-JHP-KEW |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Collette Denise Talton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. Claimant completed her high school education and obtained a bachelor of science degree.  Claimant has worked in the past as a certified nursing assistant, certified medical assistant, certified home health agency provider, telephone operations clerk, private duty care clerk, bail bond clerk, and state auditor.  Claimant alleges an inability to work beginning May 25, 2007 due to limitations

resulting from arthritis, high blood pressure, diabetes, asthma, anxiety, back and knee pain, PTSD, migraine headaches, insomnia, and chronic fatigue syndrome.

## Procedural History

On September 9, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 23, 2010, Claimant appeared without counsel before Administrative Law Judge ("ALJ") John Belcher for an administrative hearing. Claimant was told to obtain counsel. On May 25, 2010, Claimant appeared for a second hearing. After an unfavorable decision, the Appeals Council remanded the case for further proceedings on March 15, 2012. On January 9, 2013, the ALJ conducted a third hearing after remand in Tulsa, Oklahoma. On January 17, 2014, the ALJ entered a second unfavorable decision. On May 11, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential

evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform her past relevant work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to explain why he did not consider the evidence of a service connected disability rating from the Veterans Administration ("VA"); and (2) failing to consider Claimant's mental impairments on remand as directed by the Appeals Council and, instead, attributing her conditions to alcohol addiction.

### Consideration of the VA Disability Rating

In his decision, the ALJ determined Claimant suffered from the severe impairments of asthma, sleep apnea, diabetes mellitus, obesity, chronic fatigue syndrome, an anxiety-related disorder, and an addiction disorder. (Tr. 12). The ALJ concluded that Claimant retained the RFC to perform medium work except she was able to lift and carry up to 50 pounds occasionally and up to 25 pounds frequently; push and pull up to 50 pounds occasionally and 25 pounds frequently; stand or walk up to six hours in an eight hour workday; sit up to eight hours in an eight hour workday, with normal breaks; perform tasks where there was no requirement for climbing ladders, ropes, and scaffolding; frequently but not constantly climb stairs

5

or ramps, balance, bend, stoop, and kneel, crouch or crawl. The ALJ stated that these positional non-exertional restrictions and limitations were secondary to Claimant's obesity. He further determined that Claimant was able to perform tasks where there was no requirement for exposure to common work place hazards such as fast or dangerous machinery. Claimant was able to perform tasks where there was no constant or frequent exposure (i.e - occasional at most) to fumes, odors, dusts, toxins, gases, and poor ventilation (above that found at ground level). (Tr. 16-17).

With regard to Claimant's mental restrictions, the ALJ found Claimant was able to perform moderate complex tasks (up to eight steps); able to perform tasks where there was no intense interpersonal contact with the public, co-workers, or supervisors. The ALJ explained that "in-depth or intense interpersonal contact" included "commission sales where there might be persuasion or a requirement to help people make a decision (such as a car salesperson), no team building as a supervisor or part of a team." By way of further example, the ALJ defined such contact as "a customer service representative whereby complaints of a lot of tense interchange transpires which are stress producing events." (Tr. 17).

After consultation with a vocational expert, the ALJ concluded Claimant could perform her past relevant work as a certified nursing

assistant, telephone operator, and office clerk at step four. (Tr. 19). Alternatively, the ALJ determined Claimant could perform the representative jobs of record clerk, mail clerk, and laundry worker, all of which were found to exist in substantial numbers in the regional and national economies. (Tr. 20). As a result, the ALJ found Claimant was not under a disability at any time from May 25, 2007 through June 30, 2010, the date last insured. (Tr. 21).

Claimant contends that the ALJ did not discuss the VA's disability determination and related evidence, particularly as it pertained to Claimant's mental health issues. Claimant suggests that her mental problems were not exclusively attributable to her alcohol abuse as the ALJ concludes in his decision, as she was diagnosed with mental conditions before her alcohol dependency was documented in the medical record.

The ALJ attributed many of Claimant's problems to her alcohol abuse. He found Claimant had no restrictions in activities of daily living when sober but had mild restrictions when not clean and sober. He determined Claimant had mild to moderate restrictions in social functioning when sober but moderate restrictions when not sober. She experienced mild to moderate difficulties in concentration, persistence, or pace when clean and sober but moderate deficits when not sober. (Tr. 15).

Claimant served in the military on active duty for training

from September of 1986 to March of 1987 and was on active duty from November of 1990 to May of 1991 as a medical laboratory specialist. (Tr. 461). Thereafter, Claimant obtained treatment for various conditions at the VA Medical Center in Muskogee and Oklahoma City, Oklahoma. (Tr. 373). The record indicates Claimant began drinking heavily in 2011 after the death of her sister. (Tr. 1807). Prior to that time, the VA records do not reference alcohol abuse. Also prior to that time, however, Claimant exhibited symptoms of paranoia ("perception of roommates and their expressing thoughts about her when they do not know she is listening" (Tr. 1749); "upset w/hairdresser, 'talked behind my back'" (Tr. 1739); "I keep having people talk about me at work and people from the shelter have called and kept me from getting jobs" (Tr. 1747), anger (protective order filed by co-worker when Claimant "grabbed her and . . . shook her around . . . grabbed her up under one arm and . . . pulled her hair and slung her into a pallet of boxes over in the corner" for which she was required to undergo anger management (Tr. 105-106), depression (Tr. 1732), and insomnia (Tr. 1468). Much of this conduct occurred before the onset date but is relevant as background.

After the onset date, Claimant continued with a diagnosis of primary insomnia and anxiety NOS with somatic features. (Tr. 553-57, 1713). In March of 2011, Claimant also expressed delusions that

8

the mental health provider had been talking about her with her previous therapist and with her previous boyfriend. Her concentration and abstraction were fair, intelligence was good, comprehension was good, memory was fair, insight and judgment were poor. She was diagnosed with a mood disorder, NOS, rule out bipolar disorder with psychosis, anxiety disorder, NOS, psychosis, NOS by history. Her GAF was estimated at 50. Alcohol use was not noted. (Tr. 2073).

At least by 2010, the VA had assessed a disability rating upon Claimant of 20% - 10% due to Chronic Fatigue Syndrome and 10% for Neurosis, General Anxiety Disorder. (Tr. 1822, 1827, 1830). The ALJ failed to discuss the VA disability rating at all in his decision. Moreover, other than concentrating upon Claimant's alcohol use, the ALJ virtually ignored all independent indications of Claimant's documented mental problems. Instead, he focused upon a single consultative report and then rejected the findings of non-severity to indicate mild to moderate restrictions in social functioning related to Claimant's anxiety. (Tr. 18-19).

The ALJ was required to discuss the VA disability rating. "Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive. Baca v. Dep't of Health & Human Servs., 5 F.3d

476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.") (quotation omitted); see also 20 C.F.R. § 416.912(b)(5) (defining the disability determinations of other agencies as evidence to be considered by the Social Security Administration)." Grogan v. Barnhart, 399 F.3d 1257, 1262-63 (10th Cir. 2005). Defendant attempts to suggest that the VA disability rating is somehow encompassed into the RFC determination made by the ALJ. Neither Defendant nor this Court can "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Id. at 1263 citing e.g., Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004); SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943). On remand, the ALJ shall consider and discuss the VA disability rating.

Moreover, the ALJ essentially ignored evidence contained in the VA medical records pertaining to Claimant's mental health problems, apparently prior to and independent from her alcohol dependency. Such a failure to discuss this medical evidence without reference to alcohol is error. *See* Green v. Comm. of Soc. Sec. Admin., 734 Fed.Appx. 600, 604 (10th Cir. 2018).

The ALJ also rejected the findings of Dr. Dennis Rawlings who examined Claimant on November 18, 2008 - prior to any indication

that Claimant was abusing alcohol. He diagnosed Claimant with Major Depressive Disorder, recurrent, severe, without psychotic features, improved with treatment; Anxiety Disorder, NOS; Dysthymic Disorder; and Post Traumatic Stress Disorder mild to moderate. (Tr. 678). The ALJ stated "Dr. Rawlings was not presented with Ms. Talton's true alcohol abuse and dependency history, which would naturally erode some of his DSM Axis I diagnoses." (Tr. 14). The ALJ paints the entire medical record with a broad brush, considering that Claimant's alcohol abuse taints all medical evidence and findings. He failed to recognize that Claimant's excessive alcohol use was not present throughout the entire treatment record and the entire relevant period. Moreover, with regard to the ALJ's conclusions of the effect of alcohol use upon Dr. Rawlings' findings, the ALJ cannot substitute his own perceived medical judgment for that of the professional. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996). On remand, the ALJ shall reconsider Dr. Rawlings' medical findings.

Claimant also challenges the credibility findings of the ALJ. The ALJ largely rejected Claimant's credibility based solely upon her alleged lack of truthfulness on her sobriety. (Tr. 17). The medical record, at least partially, supports her testimony regarding her other mental conditions. On remand, the ALJ shall also assess Claimant's credibility on relevant mental health matters other than

her alcohol use.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE